UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRANCE COVINGTON, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> RICHARD ADAMS,[1] ) <br> ) <br> Respondents. ) | Case No. 1:19 CV 128 ACL |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Terrance Covington for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Covington is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City, Missouri. (Doc. 7-2 at 44-47).

On May 14, 2015, a jury found Covington guilty of two counts of robbery and two counts of armed criminal action. (Doc. 7-1 at 566.) The court sentenced Covington, as a prior and persistent offender, to 28 years' imprisonment on each count. (Doc. 7-2 at 44-47.)

Covington raised two claims on direct appeal of his convictions. First, he argued that the trial court erred by abusing its discretion in violation of his right to due process, right to

---

[1]The Court substitutes Richard Adams, the Warden of Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, where Petitioner is currently in custody, for Jason Lewis, who was the Warden of Southeast Correctional Center, where Petitioner was incarcerated at the time he filed this habeas proceeding. *See* Rule 2b of the Rules Governing Section 2254 Cases in the United States District Courts.

1

present a defense, right to confrontation and cross-examination, and right to a fair trial, by precluding the defense from cross-examining Debra Henry on a certain issue. (Doc. 7-3 at 19.) In his second point, he argued that the trial court plainly erred in overruling his objections and admitting the 911 call of Herbert Harris because it violated his right to due process, right to confrontation and cross-examination, and right to a fair trial, in that the statements were impermissible hearsay. *Id.* at 21. On November 2, 2016, the Missouri Court of Appeals affirmed Covington's convictions. (Doc. 7-5.)

Covington filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc. 7-7 at 4.) After appointment of counsel, an amended post-conviction relief motion was filed. *Id.* at 6. The motion court denied Covington's post-conviction motion after holding an evidentiary hearing. *Id.* at 8.

In his appeal, Covington argued that the motion court erred in denying relief because trial counsel was ineffective in the following respects: (1) trial counsel's decision to reveal client confidences and create a record regarding trial counsel's decision not to call Harris created an actual conflict of interest during a critical stage of the proceedings; and (2) trial counsel failed to call Harris as a witness. (Doc. 7-10 at 4.) On December 4, 2018, the Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 7-10.)

Covington filed the instant Petition on August 5, 2019, in which he raises the following grounds for relief: (1) an evidentiary ruling violated his constitutional rights; and (2) trial counsel was ineffective in not calling Harris as a witness. (Doc. 1.)

Respondent argues that the Petition should be denied, because Ground One is procedurally barred and both claims fail on their merits. (Doc. 7.)

2

## II.  Facts[2]

Viewing the evidence in the light most favorable to the verdict, the record reveals that on the morning of June 1, 2012, Herbert Harris and Debra Henry went to the Currency Exchange on Jefferson Avenue in St. Louis to get money to pay their rent and electric bill. While in the Currency Exchange, Harris noticed a man riding a bicycle around their car and went outside to investigate.  He returned with a man Henry did not know, later identified as Covington.  After they were finished, Harris talked to Henry about getting a television, which led them to follow Covington and his associate to an address on Texas Avenue.  Harris later admitted that instead of going to buy a television from Covington, he was going to buy an ounce of marijuana.

Once all the parties arrived at Texas Avenue, Covington ran into one of the homes. Meanwhile, his associate approached Harris and Henry's car on the passenger's side and revealed a small black gun, telling Henry to "give it up," at which point she handed him her purse containing her cell phone, lottery tickets, and $60 cash.  Covington then reappeared and approached the car on the driver's side, putting a larger gun to the back of Harris's ear, telling his associate, "Kill that m—f—.  Shoot the b—," in reference to Henry, at which point Harris gave Covington his wallet containing the money order for the rent.  Harris and Henry were then told to drive away.

Later that day, Covington attempted to cash the money order at the North Grand Currency Exchange location, providing identification.  The employee at that location had been notified that the money order was stolen earlier in the day, so she confiscated the money order and called the police.  Police used the identification Covington provided to obtain a picture,

---

[2]The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals affirming the decision of the motion court.  (Doc. 7-10 at 1-3.)

which they put into a photo spread. Henry identified Covington from the photo spread, and later she and Harris identified Covington from a photo of a live line-up. Covington was then arrested and charged with two counts of first-degree robbery and two counts of armed criminal action.

The State endorsed Harris as a witness prior to trial, but later elected not to call him to the stand. Henry was the only witness to the robbery to testify. Covington's counsel also elected not to call Harris.

### III.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

4

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

### IV.  Petitioner's Claims

The undersigned will discuss Covington's two grounds for relief in turn.

**1.     Ground One**

In his first ground for relief, Covington argues that: "Mr. Harris['] statements were shown at the outset of trial to be untrustworthy, when he changed his story about the purpose underlying his meeting with me." (Doc. 1 at 5.) Covington argues that this violated his rights to due process, right to confrontation, right to cross-examination, and the right to a fair trial. *Id.* The undersigned construes Ground One to be the claim raised in Covington's second claim on direct appeal. There, Covington argued that the trial court should not have admitted Harris' 911 call into evidence as it was hearsay that did not fall within the excited utterance exception. Specifically, Covington alleged as follows on direct appeal:

> The trial court plainly erred in overruling Appellant Terrance Covington's objections and allowing into evidence State's Exhibit No. 15 (the 911 call statements of alleged victim Mr. Harris), in violation of Mr. Covington's right to due process of law, right to confrontation and cross-examination, and right to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, §§10 and 18(a) of the Missouri Constitution, because the statements were hearsay, the excited utterance

5

>exceptions to the hearsay rule did not apply, in that th[e] State as the proponent of the evidence had not shown that Mr. Harris did not have the opportunity to fabricate his statements, and in that Mr. Harris' statements were already shown-at the outset of trial-to be untrustworthy since he had changed his story about the purpose underlying his meeting with Mr. Covington.

(Doc. 7-3 at 21.)

Respondent argues that Covington's claim is procedurally barred.  As noted by the Missouri Court of Appeals, Covington "did not include this claim in his motion for new trial" so it was reviewed "only for plain error."  (Doc 7-5 at 6.)

"[A] federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) (resolving intra-circuit split in favor of the holding in *Hayes v. Lockhart*, 766 F.2d 1247 (8th Cir. 1985)); *see also Cooper v. Steele*, No. 4:13CV01610 PLC, 2017 WL 2132370, at *13-14 (E.D. Mo. May 17, 2017) (applying *Clark* to plain-error review by the Missouri Court of Appeals).   Thus, Ground One is procedurally defaulted.   Covington does not allege cause and prejudice to excuse the default.

Accordingly, Ground One is denied.

**2.    Ground Two**

In his second ground for relief, Covington argues that trial counsel was ineffective for choosing not to call Harris as a witness.

Trial counsel made a record describing his decision not to call Harris as follows:

>[Counsel]: Terrance, you and I have talked about whether or not to call Mr. Harris as a witness since the State didn't call him as a witness.   I told you that my feeling was that based upon his deposition and the fact that the State gets to cross-examine him, that he's too much of a loose cannon and that I think that there's too many pitfalls to put him on the witness stand, and that I don't believe that the evidence that he would give would necessarily put us in any better position than we already are with errors that we have preserved.   And we've talked about that, haven't we?

6

[Covington]: Yes.

[Counsel]: And I will call him if you want, but a lot more is going to come in, because right now, right now there is no—he hasn't testified that he was robbed or anything.  But if he gets up there, I can pretty well tell you that that's going to come out, and we've talked about that, and so do you agree with me not to put him on the stand?

[Covington]: Yeah, I agree with you.

[Counsel]: Well, you hesitated so.  You hesitated.

[Covington]: No, I agree.

[Counsel]: And there's been no other witnesses that we're aware of to any of these allegations, right?

[Covington]: Right.

[Counsel]: So we're not going to be putting on any evidence, and we both agreed to do that, haven't we?

[Covington]: Right.

[Counsel]: And I've told you that I think that that's the best course of action, and you haven't said you disagree with me so—

[Covington]: Right, I agree.

[Counsel]: --that's what we're going to do.  Okay?

[Covington]: (Nodding head.)

(Doc. 7-1 at 510-11.)

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the *Strickland* standard: Covington must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney.  *Id*

7

To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

Covington raised this claim in the post-conviction proceedings. The motion court held an evidentiary hearing, at which Harris and trial counsel testified. Harris testified that Covington pulled a gun on him and on Henry, threatened to kill Henry, and robbed both of them. (Doc. 7-6 at 15.) He indicated that this is the testimony he would have offered if he had been called at trial. *Id.* Trial counsel testified that he told the jury in his opening statement they would hear testimony from Harris that he was going to buy marijuana from Covington, but Harris did not testify because the State chose not to call him. *Id.* at 21-22. On cross-examination, counsel stated that he did not "believe that what Mr. Harris was going to testify to would have been in any way advantageous to the ultimate evidence against Mr. Covington, regrettably." *Id.* at 27. Counsel explained as follows:

> Irrespective of the issue of drugs or not drugs, the one thing that remained the same after the deposition and the police reports was that Mr. Covington and I think there was another individual attempted or did—I don't remember if it was a completed robbery—but that they did rob or attempt to rob Mr. Harris and Ms. Henry.

*Id.* He further stated that he "would not have put Mr. Harris on the witness stand under any circumstances that I can think of," and that this was a "matter of trial strategy." *Id.* at 27-28.

The Missouri Court of Appeals rejected Covington's claim that his trial counsel was ineffective for not calling Harris as a witness, holding as follows, in relevant part:

8

> At the outset of our analysis on this point, we note that when Trial Counsel made the record regarding not calling Harris as a witness, Movant stated at least seven times that he agreed with this decision. And when the court followed up, saying, 'Mr. Covington, I just want to be sure, because I want to do whatever you think is best for you. Are you in agreement with the things that [Trial Counsel] just talked about concerning your strategy in this case," Movant said "yeah, I agree.' While it is true that Trial Counsel knew about Harris, that he was in the court room during trial, and he would have testified if called, we cannot find that Harris's testimony would have produced a viable defense. Had Harris testified, the jury would have heard him describe how Movant put a gun to his head, and then told his associate to 'Kill the m—f--,' and to 'shoot the b--,' in reference to Henry. The motion court found that adding such testimony would be 'far more damaging,' and that finding was not clearly erroneous.
>
> Harris's conduct at the evidentiary hearing is also worth noting, as it further shows Trial Counsel was reasonable in his assessment that Harris was a 'loose cannon.' At the evidentiary hearing, Harris started multiple answers with 'Hell yeah,' and at one point told Movant's Appellate Counsel, '[s]ee, and I want to ask you, do I have to answer the question before—could I ask you a question?' This, together with the damaging nature of Harris's testimony, further shows that Trial Counsel's decision to not call Harris to the stand was reasonable trial strategy.
> ***
> Movant also fails to show he was prejudiced by Trial Counsel's failure to call Harris. It cannot reasonably be argued, based on what Harris would have testified to, that there is a reasonable probability the results at trial would have been different if he had testified. See Strickland, 466 U.S. at 694. Further, Movant's argument that he was prejudiced because Trial Counsel had told the jury they would hear from Harris in his opening statement, and that the failure to call him allowed the State to make an adverse inference argument, also fails. While it is true that failing to present certain evidence promised in opening statements can call counsel's effectiveness into question, courts look to whether 'unforeseeable events' occurring during the trial would justify counsel's change in trial strategy. [citation omitted] The State endorsed Harris prior to trial, so it was reasonable to assume the State would call him as a witness. And when the State did not call Harris, Trial Counsel considered what he would testify to and made the strategic decision that it was best for the defense not to call him either. We find that Trial Counsel's strategy was justified.

(Doc. 7-10 at 9-11.)

The decision not to call a witness is a "virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005).

The decision of the Missouri Court of Appeals neither incorrectly nor unreasonably applied clearly established federal law. Trial counsel's decision not to call Harris as a witness

9

was one of reasonable trial strategy. Counsel made a thorough record of his decision not to call Harris. As noted by the Missouri Court of Appeals, Covington "stated at least seven times that he agreed with this decision." (Doc. 7-10 at 9.) Harris' testimony would not have been helpful to the defense, in that he would have testified Covington put a gun to his head and to that of Henry, threatened to kill Henry, and ultimately robbed both Harris and Henry. The Missouri Court of Appeals also recognized that the evidentiary hearing confirmed trial counsel's assessment of Harris as a "loose cannon." Further, trial counsel's decision not to call Harris did not prejudice Covington, in light of the fact that the testimony described by Harris would have been harmful to Covington's defense.

Accordingly, Ground Two will be denied.

## V.     Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Covington has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

> /s/ Abbie Crites-Leoni
> ABBIE CRITES-LEONI
> UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2022.